## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SYLVESTER TRACKLING** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4151** |
| **N. BURL CAIN, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION "A"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Sylvester Trackling, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Trackling was charged by bill of information in Orleans Parish on July 2, 2002, with the attempted sexual battery of T.F. and sexual battery of A.D.[3]  On March 20, 2003, the second count was amended to attempted sexual battery of A.D.[4]

The counts were severed for trial purposes.[5]  After being found competent to proceed,[6] Trackling was tried before a jury on the first count on August 26 and 27, 2003, and he was found not guilty.[7]  The relevant facts related to the second count have been summarized by the Louisiana Fourth Circuit as follows:

> On May 20, 2002, A.D. was walking to Walgreens from her home on Mandeville Street to return an item for her mother. The defendant stopped her, sat her down on some steps, and began to talk to her, asking her name and age and if she needed anything. She told him she was not supposed to talk to strangers.  Before she could leave, he grabbed her hands, started to put his hands up her shorts, and rubbed on her vagina.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 12, Bill of Information, 7/2/02.

[4]St. Rec. Vol. 1 of 12, Minute Entry, 3/20/03; Minute Entry, 10/22/03.

[5]St. Rec. Vol. 4 of 12, Motion for Severance of Offenses, 8/28/03; Trial Court Order (undated).

[6]St. Rec. Vol. 1 of 12, Minute Entry, 8/26/03.

[7]St. Rec. Vol. 1 of 12, Trial Minutes, 8/26/03; Trial Minutes, 8/27/03; St. Rec. Vol. 3 of 12, Jury Verdict, 8/27/03.

The defendant did not reach under her underwear.  After a few minutes she was able to kick a cardboard box out of the way and run up the street.  A.D. encountered an adult friend, Michelle Roberts, and told her that a man had just molested her.  She told Ms. Roberts that she was afraid to tell her mother, but Ms. Roberts insisted that she had to do so.  As Ms. Roberts escorted A.D. home, they walked across the street and passed in front of a house where the defendant was standing on the porch.  When they arrived at A.D.'s house, she told her mother what happened, and her mother called the police.  Within a few minutes a police car arrived.  The officer directed A.D. and her mother to get in the vehicle and then drove them down the street.  A.D. pointed the defendant out; he was handcuffed and placed in the back of another police car.  A detective arrived and talked to A.D.; she confirmed her identification of the defendant.

During the incident a man, whom A.D. later learned was the defendant's uncle, was sitting on the front porch of the house in a wheelchair.  According to A.D., the defendant's uncle could not see what was happening.

A.D. testified that she was fourteen at the time of the trial in October 2003.  The defense did not cross-examine her.

State v. Trackling, 888 So.2d 1169 (La. App. 4th Cir. 2004) (Table); State Record

Volume 5 of 12, Louisiana Fourth Circuit Court of Appeal Opinion, 2004-KA-0759,

December 1, 2004.

Trackling was tried before a jury on the amended second count on October 22,

2003, and was found guilty as charged.[8]  The state trial court sentenced Trackling on

January 9, 2004, to serve five years in prison without benefit of parole, probation or

---

[8]St. Rec. Vol. 1 of 12, Trial Minutes, 10/22/03; St. Rec. Vol. 2 of 12, Jury Verdict, 10/22/03; Trial Transcript, 10/22/03; St. Rec. Vol. 3 of 12, Trial Transcript (continued), 10/22/03.

suspension of sentence.  The court also denied Trackling's motion to reconsider the sentence.[9]

On direct appeal, Trackling's counsel asserted three errors:[10] (1) The trial court erred in denying the defense motion to quash the bill of information on grounds that attempted sexual battery was not a crime in Louisiana. (2) The evidence was insufficient to support the verdict. (3) The trial court erred in denying the defense motion for a mistrial after the prosecutor made improper remarks during closing argument.  On December 1, 2004, the Louisiana Fourth Circuit found that attempted sexual battery was not a crime in Louisiana, reversed the conviction, and remanded the matter to the trial court for further proceedings.[11]  The court pretermitted ruling on defendant's second and third arguments.

The State filed a writ application with the Louisiana Supreme Court seeking review of that ruling.[12]  The supreme court granted the writ on April 22, 2005, and issued its ruling on January 19, 2006, reversing the 4th Circuit and reinstating the conviction.

---

[9]St. Rec. Vol. 1 of 12, Sentencing Minutes, 1/9/04; St. Rec. Vol. 4 of 12, Motion to Reconsider (undated); Trial Court Order, 1/9/04.

[10]St. Rec. Vol. 5 of 12, Appeal Brief, 2004-KA-0759, 8/2/04.

[11]State v. Trackling, 888 So.2d at 1169; St. Rec. Vol. 5 of 12, 4th Cir. Opinion, 2004-KA-0759, 12/1/04.

[12]St. Rec. Vol. 7 of 12, La. S. Ct. Writ Application, 04-K-3222, 12/30/04; St. Rec. Vol. 2 of 12, La. S. Ct. Letter, 2004-K-3222, 1/3/05.

The supreme court held that attempted sexual battery was a crime under Louisiana law, and that the trial court did not err in denying the motion to quash.[13]  The court remanded the matter to the Louisiana Fourth Circuit for consideration of the remaining two assignments of error.

On February 22, 2006, the Louisiana Fourth Circuit affirmed his conviction and sentence, finding no merit to Trackling's claims alleging insufficient evidence and erroneous denial of the motion for mistrial.[14]  Trackling did not seek further review of this ruling.

At a hearing held on March 14, 2006, the State reinstated the multiple bill proceedings, which had been delayed by the appellate proceedings.[15]  On September 27, 2006, the trial court found that Trackling was a fourth felony offender and sentenced him

---

[13]State v. Trackling, 921 So.2d 79 (La. 2006); State v. Trackling, 899 So.2d 559 (La. 2005); St. Rec. Vol. 7 of 12, La. S. Ct. Order, 04-K-3222, 1/19/06; La. S. Ct. Order, 2004-K-3222, 4/22/05.

[14]State v. Trackling, 930 So.2d 60 (La. App. 4th Cir. 2006); St. Rec. Vol. 8 of 12, 4th Cir. Opinion, 2004-KA-0759, 2/22/06.

[15]St. Rec. Vol. 1 of 12, Multiple Bill Hearing Minutes, 3/14/06; St. Rec. Vol. 3 of 12, Multiple Bill Hearing Transcript, 3/14/06.  See also, St. Rec. Vol. 1 of 12, Minute Entry, 12/16/04; St. Rec. Vol. 3 of 12, Motion to Quash Multiple Bill, 12/16/04;

to serve life in prison without benefit of parole, probation or suspension of sentence.[16]
The court also denied Trackling's motion to reconsider the sentence.[17]

Trackling appealed the multiple offender sentence as excessive.[18]  The Louisiana
Fourth Circuit affirmed the sentence on May 16, 2007, finding that it was not excessive
or otherwise inappropriate.[19]

Trackling's convictions became final 30 days later, on June 15, 2007, because he
did not seek rehearing or file for review in the Louisiana Supreme Court.[20]  Butler v.
Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th
Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the
next available step in an appeal process)); Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009)
(timely filed motion for rehearing must be considered in determining the finality of a
conviction); see also, Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case,
judgment includes conviction and sentence, therefore the AEDPA "limitations period did

---

[16]St. Rec. Vol. 1 of 12, Multiple Offender Sentencing Minutes, 9/27/06; Sentencing Minutes,
9/27/06; St. Rec. Vol. 9 of 12, Sentencing Transcript, 9/27/06.

[17]Id.; St. Rec. Vol. 2 of 12, Motion to Reconsider Sentence, 9/28/06.

[18]St. Rec. Vol. 11 of 12, Appeal Brief, 2007-KA-0068, 2/12/07.

[19]State v. Trackling, 958 So.2d 1209 (La. App. 4th Cir. 2007); St. Rec. Vol. 9 of 12, 4th Cir.
Opinion, 2007-KA-0068, 5/16/07.

[20]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate
court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did
not do as noted later.

not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

Six months later, on December 27, 2007, Trackling submitted an application for post-conviction relief to the state trial court in which he asserted three grounds for relief:[21] (1) He received ineffective assistance of counsel when he was denied the right to testify. (2) The trial court gave a faulty jury instruction on reasonable doubt concerning the lack of evidence. (3) He received ineffective assistance of counsel when counsel failed to file a written opposition to the multiple bill proceedings and the evidence was insufficient to prove that he was a four-time offender.

The state trial court denied relief on January 8, 2008, finding that the first claim was not supported by the record.[22]  The court also held that the second claim was barred from review under La. Code Crim. P. art. 930.4 because it could have been raised on direct appeal, and it otherwise was without merit.  The court denied relief on the third claim because Trackling was found to be a multiple offender after a full hearing and he had not shown prejudice.

---

[21]St. Rec. Vol. 12 of 12, Uniform Application for Post-Conviction Relief, dated 12/27/07.  The State did not provide a file stamped copy of the application.

[22]St. Rec. Vol. 12 of 12, Trial Court Judgment, 1/8/08.

On February 4, 2008, Trackling submitted an application for review of this ruling to the Louisiana Fourth Circuit.[23]  The court denied relief on March 4, 2008, finding no error in the trial court's ruling.[24]

On August 15, 2008, Trackling submitted a writ application to the Louisiana Supreme Court in which he sought review of his three post-conviction claims.[25]  The court denied the writ application without stated reasons on May 29, 2009.[26]

## II.   FEDERAL HABEAS PETITION

On June 24, 2009, the clerk of this court filed Trackling's petition for federal habeas corpus relief in which he asserts four grounds for relief:[27] (1) He was convicted of the offense of attempted sexual battery, which is not a crime in Louisiana. (2) The evidence was insufficient to support the verdict. (3) The trial court abused its discretion in denying the defense motion for a mistrial after the prosecutor made improper remarks during closing argument. (4) He was prejudiced by counsel's failure to file written objections regarding the sufficiency of the evidence at the multiple bill hearing.

---

[23]St. Rec. Vol. 12 of 12, 4th Cir. Writ Application, 2008-K-0159, 2/12/08 (dated 2/4/08).

[24]St. Rec. Vol. 12 of 12, 4th Cir. Order, 2008-K-0159, 3/4/08.

[25]St. Rec. Vol. 12 of 12, La. S. Ct. Writ Application, 08-KH-2145, 9/4/08 (postmarked 8/18/08, cover letter dated 8/15/08, writ application dated 3/20/08).

[26]State ex rel. Trackling v. State, 9 So.3d 159 (La. 2009); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2008-KH-2145, 5/29/09.

[27]Rec. Doc. No. 1.

The State filed a response in opposition to Trackling's petition, alleging that the petition was not timely filed and that Trackling failed to exhaust state court remedies as to two of the claims raised in the petition.[28] Alternatively, as to the two exhausted claims, the State argues that Trackling's first claim is not appropriate for federal habeas review and the fourth claim is without merit.

## III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[29] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Trackling's petition, which, for reasons discussed below, is deemed filed in this federal court on June 17, 2009.[30]

---

[28]Rec. Doc. No. 6.

[29]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Trackling's petition was filed by the clerk of this court on June 24, 2009, when pauper status was granted.  Trackling's signature on the petition is dated June 17, 2009.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Trackling's petition is untimely and that he has failed to exhaust state court remedies as to two of his claims for relief. I find that, while Trackling has failed to exhaust, his petition should be dismissed with prejudice as time barred.

IV.   EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state

10

courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420).  It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court.  Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Trackling must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through to the Louisiana Supreme Court in a procedurally proper manner and have given that court, and the lower state courts, an opportunity to address those claims.  The

record reflects that Trackling has failed to submit his second and third claims to the Louisiana Supreme Court.

A review of the record shows that Trackling's counsel raised these two claims, insufficient evidence and error in denying the motion for a mistrial, on direct appeal. In its first review of the appeal, the Louisiana Fourth Circuit reversed the conviction based only on Trackling's first claim alleging that attempted sexual battery was not a crime in Louisiana. In the State's subsequent writ application, the Louisiana Supreme Court addressed only that first claim. Trackling's first claim, challenging whether attempted sexual battery is a crime, was therefore exhausted.

As outlined previously, the Louisiana Supreme Court reversed the Louisiana Fourth Circuit and remanded for that court to consider the other two claims, insufficient evidence and error in denying the motion for mistrial. After the Louisiana Fourth Circuit found no merit in either of those claims, however, Trackling sought no further review. He did not return to the Louisiana Supreme Court for review of his second and third claims addressing sufficiency of the evidence and the alleged error in denying the motion for mistrial. These two claims are not exhausted.

Trackling's fourth claim before this court concerning his counsel's alleged failure to object to the sufficiency of the evidence at the multiple offender hearing was raised

on post-conviction review in the state trial court and was thereafter presented to the Louisiana Fourth Circuit and the Louisiana Supreme Court.  That claim is exhausted.

Thus, this case, which includes unexhausted claims, is a "mixed petition" and requires dismissal for that reason.  See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420).  The record discloses no good cause for Trackling's failure to exhaust these claims, and this court can find none.  Rhines v. Weber, 544 U.S. 269, 278 (2005).

Having shown no good cause for his failure to exhaust, this petition might be dismissed without prejudice to require Trackling to exhaust available state court remedies as to all of his claims, unless he were to amend or resubmit the habeas petition to present only exhausted claims.  Pliler, 542 U.S. at 233 (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.  His failure to exhaust, however, is only one defense raised to the petition.  The State has also raised the untimeliness of Trackling's petition and that defense is dispositive of his petition.  Thus, I find that dismissing the case without prejudice and requiring Trackling first to amend or exhaust his claims in the state courts would be a vain and useless act.

IV.   <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[31]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  Trackling's conviction was final on June 15, 2007, when he did not pursue review of his life sentence appeal in the Louisiana Supreme Court.

Thus, under a literal application of the statute, Trackling had one year from the date his conviction became final, Monday, June 16, 200<u>8</u>,[32] to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

---

[31]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

[32]The last day of the one-year period fell on Saturday, June 14, 2008, and is therefore considered to have ended on the following business day, Monday, June 16, 2008.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Trackling has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent. See Holland v. Florida, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant

15

state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).

16

By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. <u>Pace</u>, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); <u>Williams v. Cain</u>, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir.

1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.  <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005).  Requests for document and transcript

copies, like those filed by this petitioner, are not other collateral review for purposes of the tolling calculation.  Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes);  Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000), aff'd, 239 F.3d 365 (5th Cir. 2000);  Gerrets v. Futrell, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year AEDPA limitations period began to run in Trackling's case on June 16, 2007, the day after his conviction was final.  The limitations period ran uninterrupted for 194 days, until December 27, 2007, when he submitted his application for post-conviction relief to the state trial court.  The application remained pending until April 3, 2008, which was 30 days after the Louisiana Fourth Circuit denied his appeal of the state court's ruling, and he failed timely to seek relief in the Louisiana Supreme Court.

The AEDPA one-year statute of limitations period began to run again the next day, on April 4, 2008, and did so for the remaining 171 days, until Monday, September 22,

19

2008,[33] when it expired.  Trackling had no other <u>properly</u> filed state post-conviction or other collateral review proceeding pending during that time period.

I recognize that Trackling submitted a writ application to the Louisiana Supreme Court on August 15, 2008.  That pleading, however, was <u>not</u> filed within 30 days after the Louisiana Fourth Circuit issued its ruling on March 4, 2008.  Under La. S. Ct. R. X§5, an application must be mailed or filed within 30 days after the appellate court's ruling to be properly filed and reviewable.  <u>See</u> <u>Butler</u>, 533 F.3d at 317.  Under federal habeas corpus law, an <u>un</u>timely state court filing <u>cannot</u> be considered in the tolling calculation.  <u>Id</u>. at 319 (La. S. Ct. R. X§5(a) forbids any extension of time); <u>Williams</u>, 217 F.3d at 309-11 (same).

In this case, the record reflects that Trackling advised the Louisiana Supreme Court that his writ application had first been mailed on March 20, 2008, and that he mailed it to the wrong court.[34]  His mail receipt dated that day indicates that his mailing was addressed to the state trial court.  Even assuming that Trackling in fact mailed his writ application on March 20, 2008, to the wrong court, he is not entitled to any tolling arising from that mailing.

---

[33]The last day fell on Sunday, September 21, 2008, and is therefore considered to have ended on the following business day, Monday, September 22, 2008.

[34]St. Rec. Vol. 12 of 12, Notarized Letter, 8/15/08.

In <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000), the United States Supreme Court specifically defined the properly filed pleading requirement to include submission of the pleading <u>to the proper court</u>:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. <u>See</u>, <u>e.g.</u>, <u>United States v. Lombardo</u>, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed. 1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. <u>See</u>, <u>e.g.</u>, <u>Habteselassie v. Novak</u>, 209 F.3d 1208, 1210-1211 (C.A.10 2000); [<u>Bennett v. Artuz</u>]199 F.3d [116,] 121 [(2d Cir. 1999)](case below); <u>Villegas v. Johnson</u>, 184 F.3d 467, 469-470 (C.A.5 1999); <u>Lovasz v. Vaughn</u>, 134 F.3d 146, 148 (C.A.3 1998).

<u>Artuz</u>, 531 U.S. at 8 (footnote omitted).

The Supreme Court in <u>Artuz</u> went on to note that "[i]f, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction . . . it will be *pending*, but not *properly filed*." (italics emphasis in original) <u>Id.</u>, 531 U.S. at 9.  This is equally true in Trackling's case.  His submission to the state trial court on March 20, 2008, was <u>not</u> a proper filing with the Louisiana Supreme Court and therefore he was not entitled to any tolling for that submission under <u>Artuz</u>.

This fact, combined with the precedent forbidding tolling for an untimely mailed (including under the prison mailbox rule) or filed writ application in the Louisiana Supreme Court, leaves no tolling relief for Trackling arising from his August 2008 writ application to the Louisiana Supreme Court.

The record establishes that, after his conviction became final, Trackling allowed more than one year to lapse, without any properly filed and pending state court proceedings and without having filed a timely federal petition for habeas corpus relief. His federal habeas corpus petition deemed filed on June 17, 2009, was filed almost nine months after the AEDPA filing period expired on September 22, 2008, and is time-barred.  Trackling's petition should be dismissed with prejudice for that reason, rather than dismissed without prejudice for failure to exhaust as discussed above.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Sylvester Trackling's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

22

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[35]

New Orleans, Louisiana, this ____21st____ day of March, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[35]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.